Jaklin IDRIS and Dariana Kamenova,
Petitioners,

v.

MARION COUNTY ASSESSOR,
Respondent.

No. 49T10–1108–TA–49.

Tax Court of Indiana.

June 4, 2014.

Jaklin Idris, Dariana Kamenova, Indianapolis, IN, Petitioners Appearing Pro Se.

Gregory F. Zoeller, Attorney General of Indiana, John P. Lowrey, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, Senior Judge.

This case concerns whether the Indiana Board of Tax Review erred in upholding the 2006 assessment of Jaklin Idris's and Dariana Kamenova's condominium unit.[1] The Court finds it did not.

## FACTS AND PROCEDURAL HISTORY

Idris and Kamenova, a mother and daughter, co-own a 2,135 square foot condominium unit in downtown Indianapolis. Their unit is in a six-story, mixed-use building with two bars[2] on the first three floors and residential condominium units on the second three floors. For the 2006 tax year, the condominium was assessed at $395,900 ($44,100 for land and $351,800 for improvements).

Idris believed that their assessment was too high and sought review first with the Marion County Property Tax Assessment Board of Appeals and then with the Indiana Board. On March 22, 2011, the Indiana Board held a hearing during which Kamenova argued that the assessment should be reduced to $270,000 because she was forced to endure excessive noise, foul odors, and persistent crime.[3] To support this claim, Kamenova presented several photographs of the building, a fire incident report, a newspaper article, and a surveil-

---

1. While Idris's petition states that she is appealing her 2006 through 2008 assessments, her Petition for Review to the Indiana Board and the Indiana Board's final determination address the propriety of her 2006 assessment only. (*See* Pet'rs' Notice of Claim—Small Tax Case ¶ 4; Cert. Admin. R. at 2–5, 15–21.) Consequently, the Court will review Idris's 2006 assessment. *See* IND.CODE § 33–26–6–3(b) (2014) (limiting the Court's review to the issues raised by the litigants during the Indiana Board proceedings or the issues discussed by the Indiana Board in its final determination).

2. During the 2006 tax year, Jillian's and Howl at the Moon were located on the first three floors of the building. (*See* Cert. Admin. R. at 266, 270.)

3. Idris did not appear at the hearing. (*See* Cert. Admin. R. at 177, 207–14.)

lance printout.[4] Kamenova also claimed that the assessments of three other condominium units within the building demonstrated that her unit was over-assessed. In support, Kamenova presented the Marion County Tax Reports and real estate listings[5] for those units, which indicated that the condominium units ranged from between 1,900 to 2,200 square feet and were assessed at approximately $132,000 to $152,000 for the 2006 tax year.[6] On June 20, 2011, the Indiana Board issued a final determination in which it declined to reduce Idris's and Kamenova's assessment.

On August 3, 2011, Idris initiated this original tax appeal.[7] The Assessor subsequently moved to dismiss Idris's appeal, but the Court denied the Assessor's motion. *See Idris v. Marion Cnty. Assessor,* 956 N.E.2d 783 (Ind. Tax Ct.2011). On June 11, 2012, the Court heard oral argument. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

█ The party seeking to overturn a final determination of the Indiana Board

bears the burden to demonstrate that it is invalid. *Hubler Realty Co. v. Hendricks Cnty. Assessor,* 938 N.E.2d 311, 313 (Ind. Tax Ct.2010). The Court will reverse a final determination of the Indiana Board if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess or short of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; or unsupported by substantial or reliable evidence. Ind. Code § 33–26–6–6(e)(1)–(5) (2014).

## ANALYSIS

On appeal, Idris contends that the Indiana Board's final determination must be reversed for three reasons. First, Idris claims that the Indiana Board abused its discretion in finding that Kamenova failed to establish that their property was entitled to an obsolescence adjustment. Second, Idris claims that the Indiana Board abused its discretion in determining that the assessments of the three other units in their building failed to show that their property was over-assessed. Third, Idris

4. Kamenova explained that some of the photographs depicted two of the constant sources of excessive noise and foul odors (*i.e.,* an alley and ventilation system), which ultimately prevented her from opening her window. (*See* Cert. Admin. R. at 189–94, 248–55.) Kamenova also explained that the fire incident report showed that the bars' customers often set off false alarms in her building during the middle of the night, the newspaper article showed that the bars' patrons routinely were unruly and noisy, and the surveillance printout showed that someone stole a couch from her lobby in 2006. (*See* Cert. Admin. R. at 195–97, 257–63.)

5. The Metropolitan Indianapolis Board of Realtors prepared the Marion County Tax Reports and real estate listings. (*See* Cert. Admin. R. at 179–88, 240–47.)

6. During the hearing, Kamenova withdrew Idris's primary claim that the tax rate was

disproportionately high in relation to other jurisdictions after Kamenova discovered that the Indiana Board lacked the authority to change the tax rate. (*See* Cert. Admin. R. at 2–5, 215, 217–23.)

7. When Idris initiated the appeal, she submitted to the Clerk of the Court photocopies of a letter from the Marion County Assessor regarding the unit's 2007 and 2008 assessments, an exhibit cover sheet describing eighteen different exhibits, and all eighteen of the exhibits. Because the majority of those items were not admitted into evidence during the Indiana Board hearing, the Court may not consider them on appeal. *See, e.g., North Park Cinemas, Inc. v. State Bd. of Tax Comm'rs,* 689 N.E.2d 765, 768 (Ind. Tax Ct.1997) (declining to consider newly presented evidence).

claims that the Indiana Board erred in upholding their assessment given the Assessor's improper use of the "one unit multiple units" classification.

### Obsolescence

 Obsolescence, a form of depreciation, is either the functional or economic loss of value to property, which is expressed as a percentage reduction to an improvement's replacement cost. *See* REAL PROPERTY ASSESSMENT GUIDELINES FOR 2002—VERSION A (incorporated by reference at 50 IND. ADMIN. CODE 2.3–1–2 (2002 Supp.)), Bk. 2, App. F at 4. For instance, external obsolescence (a loss of value caused by external factors) may be caused by environmental factors, such as noise pollution, crime, or inharmonious land use. *Id.* at 4, 13. To establish a *prima facie* case for an obsolescence adjustment, a taxpayer must present probative evidence during the Indiana Board hearing that: (1) identifies the factors that are causing the obsolescence, and (2) quantifies the amount of obsolescence to which the taxpayer believes she is entitled. *Meadowbrook N. Apartments v. Conner*, 854 N.E.2d 950, 954 (Ind. Tax Ct.2005). "The taxpayer must relate the factors (and therefore the quantification) of obsolescence to an actual loss in property value." *Id.* (citation omitted).

 In its final determination, the Indiana Board held that Idris and Kamenova were not entitled to an obsolescence adjustment because even assuming that Kamenova established that the undesirable view, odor problems, excessive noise, and crime issues had diminished the value of their property, she did not present evidence that showed what a more accurate assessment would be. (*See* Cert. Admin. R. at 19.) On appeal, Idris maintains that the Indiana Board abused its discretion in reaching this conclusion because Kamenova presented an overwhelming amount of

reliable evidence that showed that obsolescence had indeed diminished the value of their condominium unit. (*See* Pet'rs' Br. at 9–10.)

This Court will find that the Indiana Board abused its discretion if its final determination is clearly against the logic and effect of the facts and circumstances before it or if the Indiana Board misinterprets the law. *See Hubler*, 938 N.E.2d at 315 n. 5. The certified administrative record in the case reveals that Kamenova did not offer any quantification or any other evidence to substantiate her claim that certain factors had diminished the value of her property by $125,900 (*i.e.*, $395,900–$270,000). (*See* Cert. Admin. R. at 290–92.) Accordingly, the Court must find that Idris has not established that the Indiana Board abused its discretion with respect to this issue.

### The other units

 In Indiana, real property is assessed on the basis of its market value-in-use: the value "of a property for its current use, as reflected by the utility received by the owner or a similar user, from the property." 2002 REAL PROPERTY ASSESSMENT MANUAL (2004 Reprint) (incorporated by reference at 50 I.A.C. 2.3–1–2) at 2. A taxpayer may establish that her assessment does not accurately reflect her property's market value-in-use by presenting probative, market-based evidence such as sales information regarding comparable properties. *Id.* at 5. To establish comparability, however, the taxpayer must explain to the Indiana Board the characteristics of her own property, how those characteristics relate to those of the purportedly comparable properties, and how any differences between the properties affect the relevant market value-in-use of the properties. *Long v. Wayne Twp. Assessor*, 821 N.E.2d 466, 471 (Ind. Tax Ct.2005), *review denied.*

■ In its final determination, the Indiana Board concluded that Kamenova's evidence regarding the three other units in the building did not establish that her assessment should be reduced because she did not provide any meaningful analysis as to the comparability of those properties. (*See* Cert. Admin. R. at 19–20.) Idris contends that the Indiana Board abused its discretion in reaching this conclusion because it was evident that those units were larger than her unit and their assessments were significantly less than hers. (*See* Pet'rs' Br. at 7–8; Oral Arg. Tr. at 11.) (*See also* Cert. Admin. R. at 227, 235, 240–41, 249.)

As the Indiana Board properly explained, such a comparison falls short of establishing comparability for purposes of an assessment reduction. (*See* Cert. Admin. R. at 19–20.) *See also Long,* 821 N.E.2d at 470–71 (merely stating that a property is larger or smaller than another is insufficient to establish comparability). Moreover, at no point did Kamenova actually describe her own unit's characteristics nor did she attempt to explain how any similarities or differences between her unit and the purportedly comparable units affected the market value-in-use of the subject property. (*See* Cert. Admin. R. at 227, 235, 240–41, 249.) Finally, the Marion County Tax Reports and real estate listings upon which Kamenova relied not only overtly qualified their own accuracy but also indicated that only one of the three units was larger than Kamenova's property. (*Compare* Cert. Admin. R. at 179–88 *with* 199.) Consequently, the Court finds that Idris has not demonstrated that the Indiana Board abused its discretion with respect to this issue.

## The one unit multiple units classification

■ Lastly, Idris contends that the Indiana Board's final determination must be reversed because it sanctions the Assessor's purported erroneous use of the "one unit multiple units" classification. (*See* Pet'rs' Br. at 8.) Idris explains that this classification is inapplicable because it implies that her building contains a single family who merely live in separate apartments, when it clearly does not. (*See* Oral Arg. Tr. at 4, 7.)

■ As an initial matter, other than Idris's assertion that the value of the subject property was based on the "one unit multiple units" classification, there is no evidence in the record to show that the Assessor used such a classification.[8] (*See generally* Cert. Admin. R.) Moreover, the record in this case establishes that Idris's one unit multiple units argument was not presented to the Indiana Board. (*See* Cert. Admin. R. at 2–5, 175–293.) It is well-settled that this Court generally cannot review an issue or argument raised for the first time on appeal because there would be no written findings in the record for the Court to review. *See, e.g., Scheid v. State Bd. of Tax Comm'rs,* 560 N.E.2d 1283, 1284–86 (Ind. Tax Ct.1990); IND. CODE § 33–26–6–3(b) (2014). Consequently, the Court finds that Idris has waived this argument because Kamenova could have, but failed to, present it to the Indiana Board.

## CONCLUSION

Kamenova's and Idris's presentations to both the Indiana Board and the Court reflect some of the challenges taxpayers have in understanding the complexities of

---

8. In fact, neither Indiana's assessment manual nor its guidelines provide for the "one unit multiple units" classification. *See, e.g.,* 2002 REAL PROPERTY ASSESSMENT MANUAL (2004 Reprint) (incorporated by reference at 50 IND. ADMIN. CODE 2.3–1–2 (2002 Supp.)) at 23–27.

our property tax system. While the Court is sympathetic to their plight, it is bound to apply the laws as written because *pro se* litigants are held to the same rules and standards as licensed attorneys. *See Lacey v. Indiana Dep't of State Revenue*, 959 N.E.2d 936, 940 (Ind. Tax. Ct.2011). Accordingly, the final determination of the Indiana Board is AFFIRMED in its entirety.